The cause was continued for advisement, and at this term the opinion of the Court was delivered as follows, by
Sedgwick, J.
There is no doubt that for any misfeasance or unreasonable neglect of an attorney, whereby his client suffers a loss, an action may be supported and damages recovered to the amount of that loss. By this I do not mean that an attorney is to be answerable for every error or mistake, and to be punished for it, by being charged with the payment of the debt, which he was employed to recover for his clients; but, on the contrary, that he shall be protected, where he acts with good faith, and to the best of his skill and knowledge. (2)
It would be unnecessary in this case, were it practicable, to define precisely the kind of neglect, for which an attorney is responsible to his client. It will be sufficient to decide this case, that whenever an attorney disobeys the lawful instructions of his client, and a loss ensues, for that loss the attorney is responsible. Let the claim of the plaintiff in the action before us be tried by this rule.
In February, or March, 1804, the plaintiff enclosed a copy of a note against Charles Willard to the defendant, informing him that he wished to have the contents collected ; that he considered the debt as precarious; and requesting to have it secured immediately by attaching Willard’s property. — The instructions were, to have the debt immediately secured by attaching the property. Such instructions he had a right to give ; and it was the duty of the defendant, if he undertook the trust of collecting the debt for the plaintiff, to *53 obey them. — He did undertake it; and on the 15th of the same March informed the plaintiff by. letter, that he had seen Willard, who, he said, was to continue in business, and that he had assured him, if the note was sent to him, (the defendant,) he (Willard) would pay it. On the 20th of March, the note was * enclosed and sent by the plaintiff to the defendant, without any new instructions, further than as to the manner of remitting the money.
From this statement of the facts, it is manifest that the instruo lions of the plaintiff were disobeyed. But it is said, by the terms of the letter of the 20th of March, they were waived. — Of this, in my opinion, there is no pretence. It is true no new instructions were given, nor were they necessary. All the information which the plaintiff had received, after he had made up his mind that his debt was precarious, and had given instructions conformably to have it secured, was derived from the defendant. If the debt was paid, he certainly did not wish that a suit should be instituted; but there was nothing in his letter which indicated a consent to delay on any other terms.
After some proposals by Willard to the defendant as to making payment had failed, he, on the 2d of May, issued a writ of attachment, with orders to secure the debt, which might then have been done. But the defendant, instead of obeying the instructions which he had so long before received, accepted a new promise, and the writ was not served. On the 15th of the ensuing June, two writs were issued from the defendant’s office against Willard, and more property was attached than would have been sufficient to satisfy the plaintiff’s demand. At this time the defendant was from home, and the writs were issued by his clerk. This surely can be no excuse for the defendant. After having, at his own pleasure, with out the consent of the plaintiff, and against the obvious meaning of his instructions, suspended proceedings against Willard, he ought not to have left his office in the charge of his clerk, without giving orders to secure this debt, if it should become necessary.
It appears, then, that from some time previous to the 15th of March, when the defendant made his answer to the plaintiff’s letter of instructions, the defendant neglected to obey them; and it also appears, that during the whole of * that time Willard had open and visible property, which might have been attached to secure the plaintiff’s debt, and which would have been so attached, if his instructions had been obeyed. Surely these facts show that there has been an unreasonable neglect, and a consequent loss, for which the defendant is accountable.
After pronouncing this opinion, it is but justice to the charaetei *54 of Mr. Williams, to declare that I am acquainted with no man, in whose faithful and upright conduct, and diligent attention, as an attorney, I should place more confidence. And in the case before us, although the error on the part of Mr. Williams was such, as to render him liable to indemnify the plaintiff for the loss he has sustained, yet I have no doubt it had its foundation in a humane desire to save expense and vexation to the debtor.
It is the unanimous opinion of the Court, including the Chief Justice, who was present at the hearing of the cause, that the plaintiff is entitled to judgment.

 4 Burr. 2061, Pitt vs. Yalden.