## Fitch, Appellant, *v.* Scott.

Where an attorney neglected to bring suit on a promissory note, at the first term after it was placed in his hands for collection; in consequence of which neglect, the claim was lost by the subsequent insolvency of the maker: *Held*, that the attorney was liable for the debt.

An attorney has no authority to compromise the claim of his client, and if he does so, he takes upon himself the consequences of its loss, or the damages which his client may sustain.

APPEAL from the circuit court of Yazoo county.

This was an action on the case, instituted by the defendant in error, against the plaintiff, to recover the amount of a note placed in his hands for collection as an attorney, and which, it was alleged, had been lost by his negligence. The cause was tried at the May term of Yazoo county, in 1838, and a verdict was then found in favor of the plaintiff below, for the sum of 404 dollars, upon which judgment was rendered. The defendant moved the court to grant a new trial on the facts which are stated in the bill of exceptions, which was refused, and this is the ground of the error assigned.

The note which was placed with the defendant for collection, was given by Stephen D. and S. C. Platner, for the sum of 300 dollars, and was due when handed to the attorney, which was done, as appears from the receipt of Peter D. Young and Morgan L. Fitch, who were then partners, on the 30th of August, 1834. On the trial below, the plaintiff proved the delivery of the note to the defendant, and also proved that, before the institution of this suit, his attorney had called upon the plaintiff in error to know the situation of the claim, when his attorney was told by Mr. Fitch, that his late partner had surrendered the note, and taken the transfer of a judgment on another person, and that he demanded the money or the note. It was also proved by the record of the Yazoo circuit court, that at the April term of that court, in the year 1835, the suit against the Platners on the note

[Fitch, Appellant, *v.* Scott.]

was dismissed. It was not shown when this suit was instituted, nor was there any proof of the condition of the Messrs. Platners, at the time it was received by the plaintiff in error for collection.

On the part of the defendant below, it was proved, that when the suit was dismissed in April, 1835, the makers of the note were reputed to be insolvent, and that a judgment could not then have been collected. The question for the determination of the jury was, whether the defendant or his late partner had been guilty of gross negligence in the management of the claim which had been placed in their hands, and if so, whether in consequence of such negligence, the plaintiff had sustained a loss.

The plaintiff also proved, that the assignment of the judgment had been taken, and the note given up by the defendant's partner.

It was also proved, that at the April term of said circuit court, 1838, the Platners were not insolvent, and the sheriff testified that he made the money on all the executions in his hands, returnable at that term.

It was in proof also, that a term of the circuit court of Yazoo county, had elapsed before suit was brought on the note by defendant's partner.

Yerger, for appellant.

1. It is apparent that judgment could only have been got at the April term, 1835. There is not the slightest proof of negligence before that time. The parties were then, from the proof, clearly insolvent. If judgment had been got, then nothing could have been made. Both sheriffs say, the executions, after that term, were all returned, "no property found." Under these circumstances, the suit was dismissed, and an assignment taken of another judgment, in payment by Fitch's partner.

The attorney was well warranted in acting thus, and the case falls within the principle of the decision in 7 Cranch's Rep. 436, and 2 Starkie on Ev. 84, note A; Chit. on Con. 166; 8 Mass. Rep. 51, 57.

2. But, if he were negligent and liable to the action, the verdict is not only against evidence, but is without evidence to support it. The rule is, "the jury are not to give a verdict for the whole debt, but only such damages as are commensurate with

the loss, which has resulted from his negligence. 2 Starkie on Ev. 83. And it is incumbent on the plaintiff to prove affirmatively, that the parties' circumstances were such, that the debt could have been made had it not been for the negligence. 2 Starkie on Ev. 83. Here it is clearly proved the parties were insolvent.

3. But the plaintiff must prove upon the trial, the existence of his debt, which is not done here. 2 Starkie on Ev. 83.

Thompson, *contra.*

This cause was properly submitted to the jury for them to decide—1. Whether the defendant or his partner as attorneys, had been guilty of negligence. 2. What damage, if such was the fact, had the plaintiff sustained in consequence thereof. The receipt was given in August, 1834. Could not, and ought not the defendant to have commenced suit to the Fall term, 1834, of the Yazoo circuit court, and have recovered judgment? Instead of this, we never hear of the suit, till April court, 1835, and then it is dismissed at the defendant's (Platner's) cost.

Ought not Fitch to have accounted before the jury for the suit not having been brought to the Fall court, 1834? If it had been brought, and the judgment got there, the money from his own evidence could unquestionably have been made. But if, instead of dismissing the suit at April, 1835, a judgment had been taken, from the evidence, the money might likely have been made. Again: Would not an execution against the body, have made it? Would not a vigilant creditor have tried this? and ought not a lawyer to act for his client, if he undertakes to collect his money, as a prudent, vigilant creditor would act for himself? I illustrate this by the law, in relation to the liability of the assignor of a note. In Virginia and Kentucky, the note is not negotiable, but assignable; and it is there settled, that if the assignee uses due diligence, and cannot collect the money, the assignor becomes thereby bound to refund what he received on the assignment. Now, what is there decided to be due diligence? He must sue to the first term of the court. 2 J. J. Marshall, 218; 1 Pirtle's Dig. p. 46, sect. 64. He must sue out a *fieri facias*, and a *capias ad satisfaciendum*, and use every means furnished by the law. Young *v.* Caste, 3 Bibb's

[Fitch, Appellant, *v.* Scott.]

Rep. 227; 1 Pirtle's Dig. p. 39, sect. 13. That is due diligence. Is not the attorney bound by his receipt and agreement to use due diligence? · What is done? The suit dismissed, and the assignment of another claim received. The attorney had no authority to do this, and his act was void. Wickliff *v.* Davis, 2 J. J. Marshall, 71; 1 Pirtle's Dig. p. 76, s. 15.

The affidavit there, furnished no ground for a new trial; it gives no good reason why the assignment of the judgment was not ready to be used before the jury, but negligence in not having it ready. And if it had been present, it could not have been used as evidence; for it was incompetent testimony, and furnished no defence in whole, or in part to the action. The plaintiff below was not bound to receive it; it inured to the benefit of the attorneys, and not to the client, not having been taken by any authority from him, express or implied.

The jury were the competent judges, whether there had been negligence, and what damage the plaintiff below had sustained by reason of that negligence. They have found that the plaintiff lost his debt by reason of negligence of his counsel, for this is substantially the verdict, and however innocent Mr. Fitch, the plaintiff in error may be, still he is liable for the acts of his partner—and the only question is, whether the counsel has failed to use the proper diligence, and the debt thereby lost. The jury having, after weighing all the evidence decided · in favor of the plaintiff below, and the court who heard the cause, have refused to grant a new trial. It is believed that this court would not interfere to set verdicts aside on the ground that they were not warranted by the evidence, and where the court below had refused to interfere, unless the weight of evidence was manifestly and glaringly against the verdict. It is not the case here.

Mr. Justice TROTTER delivered the opinion of the court.

· The law implies a promise on the part of attorneys, that they will execute the business entrusted to their professional management, with a reasonable degree of care, skill and despatch, and they are liable to an action, if guilty of a default in either of these duties, whereby their clients are injured. Chitty on Contracts, 166. There must, however, be gross negligence or ignorance, and if

27*

[Fitch, Appellant, *v.* Scott.]

the attorney acts to the best of his skill, and with a *bona fide* degree of attention, he will not be responsible, 4 Burrow's Rep. 2061. This was the rule laid down by Lord Mansfield in the case of Pitt *v.* Yalden, in which he remarked that, that part of the profession which is carried on by attorneys is liberal and reputable, as well as useful to the public, when they conduct themselves with honor and integrity, and that they ought to be protected when they act to the best of their knowledge and ability. These principles are recognised in the case of Gilbert *v.* Williams, 8 Mass. Rep. 51, 59. In that case, the court say there can be no doubt that for any misfeasance or unreasonable neglect of an attorney, whereby his client suffers a loss, an action may be supported. An attorney however, is not liable for every mistake, but shall be protected where he acts in good faith. Two things are, therefore, to be shown in order to subject an attorney to an action; 1. gross or unreasonable negligence or ignorance; and 2. a consequent loss to his client. Do the proofs exhibited in this cause make out the points? The note in this case, was placed in the hands of the attorney in August, 1834, in time to have commenced suit upon it to the October term of the circuit court of that county, in the same year. This was undoubtedly the duty of the attorney. And in the absence of any instructions to the contrary, we are bound to infer that such were his engagements. The note was placed in his hands to be put in suit, and it is repugnant to the very terms of his contract, to infer an authority to delay suit until the second term of the court. The debtors might be entirely able to pay a judgment rendered in October, 1834, and totally insolvent in April, 1835, and this consideration in all probability might have influenced the creditor to place the note in the attorney's hands for suit. Be this, however, as it may, we think it was the duty of the defendant to have brought such at the first term, and that in not doing so, he was guilty of unreasonable neglect. This was the view of the court in Palmer's case, commented upon by Lord Mansfield in Pitt *v.* Yalden, 4 Burr. 2061. The defendant in the suit in which Palmer had been retained, was arrested on bailable process, and by a rule of court was entitled to his discharge on filing common bail, unless declared against, before the end of the second

[Fitch, Appellant, *v*. Scott.]

term after his arrest. Palmer let the second term pass without declaring, and the defendant accordingly obtained his discharge. It was held to be a case of gross negligence, for which he was liable to his client. This is very similar to the case before us. The defendant not only permitted a term to pass before suit, but upon the return of the writ to the April term following, dismissed the suit, and surrendered the note to the debtors. The only excuse offered for this remissness is the reputed insolvency of the Platners. But this is no excuse. The suit should have been prosecuted to a final judgment, and then the process for obtaining satisfaction of it, strictly followed up. By doing so, the ability of the debtors to pay the claim, could have been tested by a legal and certain criterion. In the absence of any authority from their client, this was the only legal course of conduct for the attorneys to pursue. Instead of this, however, they take an assignment of a judgment, and deliver the claim to the debtors. An attorney has no authority to compromise the claim of his client, and if he does so, he takes upon himself the consequences of its loss, or the damages which he may sustain. The plaintiff in error was therefore guilty of a violation of his engagement to prosecute the claim of his client with proper diligence. It is a clear case of unreasonable neglect, and he is responsible to the extent of the loss ·which his client has sustained. The evidence has furnished us with no criterion of damages save the note which was surrendered. But the plaintiff in error insists that at the time it was exchanged for the judgment it was of but little value. In support of this assertion, he has furnished us with no other evidence than the mere opinions of some three or four persons. The sheriff who was examined before the jury states, that he made the money on all the executions which were in his hands returnable to the April term, 1835, of the Yazoo circuit court, against the Messrs. Platners, and that he had also learned that one of them had a negro, though he had not been able then to find it. How then can we say that if judgment had been obtained at October term, 1834, it might not have been satisfied as others were? In the case before noticed, of Gilbert *v*. Williams, the attorney disobeyed the instructions of his client to institute suit immediately. And although he did afterwards sue out the attachment, yet the debtor's property was then covered

by liens which defeated the attachment. The attorney gave the indulgence which he did on repeated promises by the debtor that the claim, which was small, should be paid, and his motive was to save the debtor from the vexation and costs of the suit. He appeared to possess ample property to pay that claim and much more. The debtor was, however, as it afterwards turned out, insolvent. Nevertheless, the court held the attorney liable for the whole debt. Because, if he had promptly obeyed the instructions of his client, the debt might have been saved by acquiring a priority of lien. So in the case before us, if the plaintiff in error had complied strictly with his engagement and obtained a judgment in October, it is highly probable the debt would have been saved. But, we are clearly of opinion, that the surrender of the note to the debtors in this case, renders the attorney responsible for the whole amount due upon it, in the absence of any certain proof, that the creditor has not by such compromise lost his whole debt. That we take to be the only legal inference from the act, and there has been no proof to destroy it. It may be proper to remark, that Mr. Fitch appears never to have had the possession or control of the claim in question, and that every thing done in regard to it was transacted by his late partner. He is not, therefore, justly subject to any blame. He is in law, however, responsible for the acts of his partner. We think the verdict is sustained by the proof.

Let the judgment of the court below be affirmed, with damages and costs.