## Town of Salem *v.* Edgerly & a.

The owner of a part of the land included in a mortgage made by a former owner, may pay the mortgage, and will be entitled to an account of rents and profits, and to an assignment of the mortgage.

Where the equities of the parties are equal, the owners of several parts of mortgaged property are bound to contribute in proportion to the relative value of their parts.

Neither of such parties can, by obtaining an assignment of the mortgage, compel the other to pay more than his ratable proportion of the debt.

In Equity. The facts, as they appear by the bill and answer, may be thus stated:

On and before the 8th of December, 1849, John L. Clindenin was seized in fee of a tract of land in Salem, containing two hundred acres. On that day he executed a mortgage of the whole tract to Betsey Kelly, to secure the payment of four hundred dollars and interest, in one year. On the 8th of May, 1850, Clindenin conveyed to Benjamin Clarke, in mortgage, the land described in the mortgage to Kelly, except a parcel of about eight acres, to secure twelve hundred dollars and interest, in four months. On the 6th of June, 1850, he conveyed five acres, part of the land included in the Kelly mortgage, but not embraced in the Clarke mortgage, to the town of Salem, in fee, and the town has ever since been in possession of it. At the time of taking their deed the town was aware of the mortgages to Kelly and Clarke.

At the September term, 1851, of the Court of Common Pleas for Rockingham County, Warren Ellis recovered a judgment against Clindenin, for $428.31 debt, and $12.21 costs, and his execution was delivered to an officer, who advertised and sold, on the 2d of January, 1852, the equity of redeeming the land included in the Kelly mortgage, and other mortgaged real estate of Clindenin to G. C. Bartlett, one of the defendants, for $320.47, and made to him a deed of the same ; and he soon after entered, by virtue of his deed, upon the whole land described in the Kelly mortgage, except the parcel conveyed to the town.

On the 3d of May, 1852, Betsey Kelly assigned her mortgage to the defendants, J. S. and D. Edgerly ; and on the 20th of May following, said Edgerlys, by Bartlett, as their attorney, entered upon all the land described in that mortgage, except that purchased by Salem, for condition broken, and for the purpose of foreclosing the mortgage, and have had possession of it since.

On the 6th of April, 1853, the note of Mrs. Kelly being unpaid, and the Edgerlys having refused, on request, to give an account of the rents and profits, the town, to prevent a foreclosure and redeem the mortgage, paid them $486.25, which was the whole amount due on the mortgage without any deduction, for which the Edgerlys gave a receipt, " on account of Betsey Kelly's mortgage assigned to us." On the 17th of August, 1853, the town, by D. Messer, demanded in writing, of the Edgerlys, an account of all their demands secured by this mortgage, and damages and costs from its non-payment, and of all rents and profits received by them. The Edgerlys did not give any account, but referred the agent of the town to the defendant, Bartlett, as their attorney, and told him that Bartlett held the property and papers in his hands, and would settle with them. The agent called on him and requested a settlement and assignment, but they were not obtained.

On the 14th of October, 1853, the Edgerlys paid Clarke the amount due on his mortgage, $1,400.20, and took an assignment of it to themselves.

Edgerly, when asked to release the land of the town from the Kelly mortgage, asked one hundred dollars to do it. But subsequently the defendants have only claimed of the town a just contribution towards the payment of that mortgage, according to the value of their land, and never took or offered to take possession of it, and the defendant, Bartlett, offered to pay back the money paid to Edgerly, if the town would pay a fair proportion of the debt and costs, which he said would amount to thirty or thirty-five dollars. The Edgerlys and Bartlett were obliged to have a joint interest in all their purchases.

The bill was filed November 23, 1854, and prayed for an account of the amount due on the mortgage, and of the rents and profits, for an assignment of the Kelly mortgage and note, and for payment of the balance of the rents and profits, and of the amount paid them by the town, after deducting the note and proper expenses, and for further relief.

*Wells,* for the plaintiffs.

*Stickney* and *Bartlett,* for the defendants.

BELL, J. As the titles to the property stood upon the records on the 6th of April, 1853, the town owning one parcel and Bartlett and Clarke other interests, the town had the right they claim, to pay the Kelly mortgage to the Edgerlys, and to demand an account of the rents and profits, and an assignment of the mortgage. They were not bound to rely upon the talk of Bartlett and the Edgerlys, that they were equally interested in the property. They appeared on the record, as owners of distinct interests, and the town had the right to treat them as such. It was clear they could not redeem the part of the mortgaged premises they owned, without paying the whole mortgage. *Mullanphy* v. *Simpson,* 4 Miss. 319 ; *Frost* v. *Frost,* 3 Sandf. Ch. R. 188 ; *Smith* v. *Kelly,* 27 Me., 14 Shep. 237 ; *Parkman* v. *Welch,* 19 Pick. 238.

When they availed themselves of this right, and paid the mortgage debt, they had a right to demand an assignment of the mortgage. *Jenness* v. *Robinson,* 10 N. H. 215.

And the demand of Edgerly of one hundred dollars to release the little parcel of the town, shows that it was not without reason that they made this payment, though the claim afterwards made was for thirty or thirty-five dollars, as a reasonable proportion of the debt, according to the value of the property.

About six months after the payment, by the town, of the Kelly mortgage, the Edgerlys took an assignment of the Clarke mortgage, and they therefore stand now in a position to raise the

Salem *v.* Edgerly.

question, whether a subsequent purchaser, with full notice of another portion of the property mortgaged to Kelly, does not stand in the same position as to them, as holders of Clarke's mortgage, as Clindenin, their grantor, would stand, if he had paid the Kelly mortgage himself; and whether in that case he would be able to maintain a claim against them for a contribution to the Kelly mortgage, against which they hold his express warrantee. 1 Hill. Mort., chap. 13, sec. 57, &c.

But as they have not chosen to raise these questions, and in their answer claim only a reasonable contribution, it is not necessary for us to consider them.

The question raised, then, is, what are the rights of the holders of separate portions of the property embraced in a mortgage, where the mortgage debt has been paid by one only?

Leaving out of consideration for the present the joint interest asserted to exist between the Edgerlys and Bartlett, the property mortgaged to Mrs. Kelly had become divided into three parcels; first, the land conveyed to Clarke; second, that conveyed to the town, and third, the equity of redeeming the two mortgages, which embraced two or three acres not sold to Salem and not mortgaged to Clarke.

In this view, Salem had a right to redeem the Kelly mortgage, and to demand an account of the debt and costs, and of the rents and profits, and an assignment of the mortgage from the Edgerlys, unless their interest in the Clarke mortgage may constitute a defence for them after they acquired it. Their position is, that if they had assigned the Kelly mortgage, when the money was paid by the town, they would now have precisely the same right to pay the mortgage debt and demand a reässignment, as the town now have to demand an assignment from them. In short, when a party, who has himself an interest to pay the mortgage and hold it for the protection of his title, has obtained such assignment, one who has merely a similar interest cannot claim, on payment, to have the mortgage assigned to him. All he can claim is, to have his property released on payment of his proportion of the debt and costs, according to the share in value

that he holds of the mortgaged property. While, on the other hand, the only claim which can be made upon him by the holder is not to pay the whole mortgage, but to pay a similar proportion, or be foreclosed.

If an owner of part of the mortgaged property obtains an assignment of the mortgage, he cannot compel the other owners to pay him the whole, but only their fair proportion of the debt, if the parties stand in *equali jure,* as it is assumed by the parties that they do here. This question arose in the case of *Allen* v. *Clarke,* 17 Pick. 47, and was fully considered and decided. The court say, " at the time Cook took an assignment from the bank, the situation of the respective owners of the two lots were in all respects equal, as they still are. Neither can hold his estate without redeeming both ; and it would manifestly be against justice and equity that either party should gain an advantage by procuring an assignment of the mortgage, and thereby throw the common burden upon the other party. The foundation of contribution is a principle of justice and equity, and when there is equal equity, and there is an incumbrance on land belonging to different parties, they ought each to contribute towards removing it."

The same question in principle arose in *Stevens* v. *Cooper,* 1 Johns. Ch. 425, where the Chancellor says : "It is a doctrine well established, that when land is charged with a burden, the charge ought to be equal, and one part ought not to bear more than its just proportion, and equity will preserve this equality by compelling the owner of each part to a just contribution. Harbert's Case, 3 Co. 14 ; *Harris* v. *Ingledon,* 3 P. Wms. 98, 99. The court will compel the creditor to aid this right of contribution, by assigning his bond and securities to the owner of the land, whom he charges with his whole demand, and will not permit him voluntarily to defeat this right. He owes a duty to the debtors, not to impair their rights, as against each other. Here the mortgagee has deprived the owners of two lots of this recourse, by previously discharging the other lots, and he ought not, then, in equity, to charge them with a greater burden than

they would have been subject to, upon the principle of contribution, if no such discharge had taken place."

In *Taylor* v. *Bassett*, 3 N. H. 298, it was held that where the land of the demandant and the land of the tenant were respectively liable for all the money due on two mortgages, either party might pay the mortgage money, and have his action against the other for a reasonable contribution. *Taylor* v. *Porter*, 7 Mass. 355, and either might buy in the mortgage, and hold all the land, until a reasonable contribution was paid by the others, from which it results that he could not require the payment of the whole debt from such other owner.

The same principles are distinctly recognized in *Robinson* v. *Leavitt*, 7 N. H. 102 ; *Jenness* v. *Robinson*, 10 N. H. 218 ; *Dole* v. *Thompson*, 2 Foster 218 ; with which agree, *Gibson* v. *Crehore*, 5 Pick. 162 ; *Parkman* v. *Welch*, 19 Pick. 238 ; *Van Vronker* v. *Eastman*, 7 Met. 157 ; *Brown* v. *Worcester Bank*, 8 Met. 47 ; *Howe* v. *Chittenden*, 1 Vt. 28 ; *Osborn* v. *Carr*, 12 Conn. 195.

In equity, the party entitled to an assignment of a mortgage may be regarded as subrogated to the rights of the mortgagee without an assignment. *Cheney* v. *Munro*, 2 Barb. Ch. 618 ; *Parkman* v. *Welch*, 19 Pick. 238 ; *Jenness* v. *Robinson*, 10 N. H. 219 ; *Downer* v. *Fox*, 5 Wash. 393. We may, therefore, look at this case as it would stand if the Edgerlys had assigned this mortgage to the town, as they ought to have done, when the town paid them the amount of it. The town would then have been entitled to a decree of foreclosure upon this mortgage, unless Clarke and Bartlett, as owners of the residue of the mortgaged property, or those who held their interests, should pay their ratable proportion of the debt, according to the value of the parts of the property held by them, after allowing the rents and profits received by them.

As there is a prayer for general relief in the bill, it is not necessary to reach the object which the plaintiff is entitled to gain, that there should be a decree that the mortgage should be assigned to the town, or a decree of foreclosure passed, unless,

for the plaintiff's safety, it may be necessary to make a decree which may bind the land.

Neither is it necessary to inquire as to the rents and profits, since the plaintiffs have kept possession of their land, and the defendants of the residue.

There may be an order that the case be referred to a master, to ascertain what is the value of the five acres owned by the town, and what the value of the residue of the land described in the mortgage, and to compute the amount due upon the mortgage, with damages and costs.

Upon the coming in of that report, a decree may be made that the defendants pay to the plaintiffs such part of the mortgage debt as the value of their part of the land bears to the whole, or such other as the case may call for.