Spear, J.
The sole ground of reversal is that the contract is void, because against public policy, being in restraint of marriage. Hence there could be no recovery. That contracts in restraint of marriage are void, as being contrary to the public policy of the law, is conceded. But the question here is whether the contract to render service, fully performed by the one party, so rests upon the promise not to marry, or is so tainted by that part of the agreement, as to be incapable of enforcement. The consideration moving to the agreement on the part of Howland to make ample provision for his niece was, on its face, twofold: one, the promise to perform the service agreed upon, the other not to marry during the continuance of such service. The first was a valid promise and of itself sufficient to support the promise of the other party; the second was a void promise, not affording any consideration whatever. As given in text books, and numerous decisions, the general rule is that if one of two considerations for a promise be merely void, the other will support the promise, although if one of two considerations be unlawful, the promise of the other party is void; and yet this rule has many exceptions, as will be shown later on. That is, if one of two considerations isvoid merelyfor insufficiency, and not for illegality, the other will support the contract. Widoe v. Webb, 20 Ohio St., 435; MetC, on Con., 246; Chitty on Con., 988; 1 Parsons on Con., 456; Comst. on Con., 24; PiKard v.cottels,Yelv., 56; Bliss v.Negus. 8 Mass., 51; Carleton v. Woods, 28 N. H., 290; Woodruff v. Hinman, 11 Vt., 592; King v. Sears, 2 C.M.&R. *370 48; Erie Railway Co. v. U. L. & E. Co., 35 N. J. L., 240; Bradburne v. Bradburne, Croke El., 149. This distinction between a contract merely void, and an illegal contract, would seem to be an important one. Courts, as a general proposition, are open for the enforcement of contracts, not for their destruction. So that, where parties have deliberately entered into a contract, valuable to them, and one has received the full advantage of it, the general policy of the law is to exact proper performance by him who has thus obtained the advantage, and some substantial defect should be shown before a court will refuse enforcement; a mere technical objection should not prevail. Now a void contract is one which has no legal force,, and which, for that reason, cannot be enforced; an unlawful contract is one to do an act which the law forbids, or to omit an act which the law enjoins, and for that reason is non-enforceable. There is no provision, either by statute or at common law, which enjoins upon any particular person the duty to marry, nor can anyone be punished for not marrying. To marry, or not to marry, is left to the free choice of all who are eligible to marriage. Hence ■to omit to marry is not illegal, though the promise to omit is one which the law will not enforce. Tt would appear naturally to follow that the only result of making such a promise would simply be that no legal right could be founded on the promise and no remedy afforded for its breach. It is difficult to see any good reason for denouncing such contract as illegal in the sense of violating any law, or of placing parties who may have entered into it outside the pale of the law.
*371 But, aside from this, in the present case the promise on the part of the woman which was of value to the man was the promise to care for him. The promise not to marry was a mere incident to the main purpose, entered into simply because it was supposed that, by remaining single, the woman could the better perform her contract. It was immaterial to the man whether she married or not so long as she fulfilled her promise as to care. In other words, the promise to remain unmarried did not enter into or become part of the substance of the general agreement; that agreement was for the performance of services. If the performance was adequate, and the services rendered in a satisfactory manner, their value could neither be enhanced nor diminished by the fact that they had been rendered by a single woman rather than a married one; so that, had the plaintiff married, yet, if she satisfactorily performed her contract, the recipient of the services would lose nothing by the fact of marriage. As matter of fact she did not marry, whether because of the contract, or for reasons wholly apart from it, is not material, for she was under no obligation to marry nor to refrain from so doing. She did perform the service; that the verdict and judgment of the comlnon pieas settles to all intents and purposes for the present inquiry. As above stated, the promise not to marry, although void because against public policy was not illegal as against positive law, and it is not easy to perceive how its presence in the contract, or its observance by her, or both facts, could place the parties in what is termed in pari delicto, i. e., in a position where the law should adjudge them guilty of its violation, and hence refuse relief for that reason in the face of the fact that the claimant had fully performed.' In such case the maxim in vari de *372 licto melior est conditio possidentis, has, in reason, no application, and we think ought not to have application in law.
Courts refuse to enforce or recognize certain classes of acts because against public policy on the ground that they have a mischievous tendency, and are thus injurious to the interests of the state, apart from illegality or immorality. A contract in restraint of marriage is of this nature. But, as before suggested, it does not follow that all contracts which may have an element of insufficiency, and may be void as to one feature, are incapable of enforcement, pr even that all that are illegal will not be enforced. Decisions are abundant in support of the proposition that even where the acts of the parties have been in violation of positive law the contract may, under some circumstances be enforced. A case in point is Lester v. The Bank, 33 Md., 558. The bank’s charter forbade a director, under penalty of fine and imprisonment, to borrow money from the bank. It was claimed that the act of thus lending by the bank was null and void; that no rights could accrue from it and hence no action could be had by either party based upon it. The court held, however, that: “Contracts made in violation of statute, are not necessarily incapable of enforcement because of their illegality. Whether the courts will enforce them or not, is a question of public policy, and they will be enforced when it may be adjudged that such policy requires their enforcement.” Robinson, J., in the opinion, remarks that: “Public policy, it must be borne in mind, lies at the basis of the law in regard to illegal. contracts, and the rule is adopted not for the benefit of parties but of the public. It is, evident, therefore, that cases may arise, even under contracts of this character, in which *373 the public interests will be better promoted by granting than by denying relief, and in such the general rule must yield to this policy,” and cites 1 Story’s Eq. Jur., sec. 298. This policy of the law finds expression in our statutes authorizing the recovery back of money lost at gaming, and the decisions under them; See also, Burkholder’s Appeal, 105 Penna. St., 31. To justify refusal of relief to the plaintiff, on the ground referred to, the court ought to be ready to hold that the public mischiefs would be greater by permitting a party to recover who had made and performed a contract otherwise well founded but embracing an agreement not to marry while in its performance, than by permitting the other party to have the full benefit of meritorious service for nothing, thus repudiating his agreements, all of which were legal and based upon at least one consideration entirely adequate and wholly lawful. We are not prepared to make such a holding, but are clearly of opinion that no mischiefs to the public would result from sustaining a right to recover in a case like the present comparable to those Avhich would 'follow a contrary holding, one which would encourage the violation of contracts and the repudiation of just obligations after full value had been received.
Other phases of the case are argued by defendants in error. The printed record presented embraces only the question here treated. If is not the duty of the court to hunt through portions of the record not printed in the quest of other reasons why the judgment of the common pleas should have been reversed, and we decline to do so.

The judgment of the circuit court will be reversed and that of the common pleas affirmed.