Neel, J.
Plaintiffs Steven Clerico (“Clerico”) and Catherine D’Amore (“D’Amore”), and their corporation, Floors N More, Inc. (“Floors N More”), sued defendants Great Road Floors, Inc. (“Great Road Floors”) and Thomas F. Barrasso (“Barrasso”) for breach of a non-competition provision in the agreement by which plaintiffs purchased the business of Great Road Floors. The complaint (in case No. 95-5679) alleges breach of contract, breach of the implied covenant of good faith and fair dealing, deceit, and G.L.c. 93A violations. Separately, and alternatively, plaintiffs Clerico and D’Amore sued their attorney in the transaction, defendant Steven T. David, for negligence in drafting the purchase and sale agreement (Case No. 95-6475).[4] Specifically, plaintiffs allege that if Barrasso is found not to be bound by the covenant not to compete, the fault lies with their attorney.[5] The two cases were consolidated and tried without jury. For the reasons set forth below, judgment shall enter for defendants in No. 95-5679, and for plaintiffs in No. 95-6475.
FINDINGS OF FACT
Based upon the credible evidence and inferences reasonably drawn therefrom, I find as follows.
Oh September 13, 1994, Clerico, D’Amore, and Great Road Floors entered into a Purchase and Sale Agreement (“Agreement”) whereby Clerico and D’Amore (hereafter sometimes referred to as the individual plaintiffs) purchased the assets and goodwill of Great Road Floors for a purchase price of $55,000. Attorney David represented the individual plaintiffs in the negotiations and closing of the purchase transaction.
The first paragraph of the Agreement states that the Agreement is made “by and between” Great Road Floors (defined as “Seller”) and the individual plaintiffs (“Buyer”), and does not name Barrasso as a party. Indeed, Barrasso’s name appears nowhere in the Agreement, except on the last page, in this form:
GREAT ROAD FLOORS, INC.
By:
Thomas Barrasso
SELLER:
Barrasso’s signature is handwritten; the remainder of the quoted execution is typed.
The Agreement states, at page one:
. . . the parties hereto desire to set forth certain representations, warranties and covenants made by each to the other as an inducement to the consummation of the sale and certain additional agreements related to the sale.
Article XI, titled “Restrictive Covenant,” states in part:
Seller hereby agrees that for a period of five (5) years Great Road Floors or any legal entity of which either is involved (sic) shall not operate any other type of flooring company within twenty-five (25) miles of the Seller’s present location.
The language of Article XI just quoted is ambiguous, in that (1) it does not appear from the four corners of the document what entities are encompassed by the phrase “or any legal entity of which either is involved," and (2) it does not clearly specify to what or whom “either” refers.
*679 In August 1994, prior to the sale, D’Amore and Clerico retained David to represent them in the transaction. D’Amore was the one who first called David, and it was primarily she, rather than Clerico, who dealt with David as the negotiations progressed. For her initial meeting with David, D’Amore prepared an outline of her requirements for the transaction (Trial Ex. 3), which stated “for two years will not have anything to do with the flooring industry.” She intended that statement to apply to Barrasso, and David so understood it.
David prepared a draft of the Agreement, which he amended over time after conversations with D’Amore, and with Great Road Floors’ attorney, Louis A. Florio. At least one preliminary version of the Agreement which David sent to D’Amore (Trial Ex. 8) contained the restrictive covenant language quoted above. D’Amore was unhappy with that language, believing that it did not restrict Barrasso individually from competing with her and Clerico in their new business. Her intention was that Barrasso be so restricted. She communicated her concern to David, who told her that he would revise the language and send her a new version.
At some time prior to the September 13, 1994, closing, D’Amore testified, David faxed to her a version of the Agreement which expressly named Barrasso in the restrictive covenant. At the closing, she did not read the Agreement when she signed it, but rather assumed that it was the version she says she received naming Barrasso. She did not discover until several months later that he was not named in Article XI, and she is unable to produce the version she says she saw which included Barrasso’s name in that article.
In drafting what became the final language of Article XI, David intended to bind Barrasso individually, in addition to Great Road Floors, because D’Amore had asked him to do so. He acknowledged at trial that it is “typical” in a purchase and sale agreement involving the sale of a small business to restrict competition of key persons in the selling entity.
Present at the September 13, 1994 closing, which took place in Florio’s office, were Florio and his secretary; Barrasso and his wife, Lucy; D’Amore and Clerico; and David. Florio represented Great Road Floors, but not Barrasso personally; David represented D’Amore and Clerico. At the time, Barrasso was chief executive officer, and he and his wife were the only shareholders, of Great Road Floors.
Although he participated in the closing, Barrasso did not believe that he was personally entering into a contract with D’Amore and Clerico; specifically, he did not believe that he was bound personally by the Article XI restrictive covenant. Rather, he believed that he was acting as the corporate representative of Great Road Floors, and that he signed various documents in his corporate, rather than individual, capacity. Nor was there any discussion with him, at or prior to the closing, as to whether he would be personally bound by that provision even though he was not expressly named in it.
There was discussion among plaintiffs and Barrasso, both prior to and at the closing, regarding Barrasso’s plans for the future. Barrasso stated that he did not intend to open another flooring store, which was true; there was also talk of at least partial retirement. At the time, Barrasso intended to continue to be free to conduct limited (as opposed to full time) business activities in the flooring industry, and he assumed and intended that, following the closing, he would be free to do so.
Had plaintiffs known that Barrasso was not bound personally under Article XI, they would not have signed the Agreement. Had the Agreement reflected D’Amore’s instruction that Barrasso personally would not have “anything to do with the flooring industry,” Barrasso would not have signed the Agreement on behalf of Great Road Floors. There is insufficient basis in the evidence upon which to find that the parties would have struck a deal (at some higher price) which would have included a non-competition provision binding Barrasso; nor is there a sufficient basis upon which to conclude that, even had such a deal been struck, plaintiffs would have been able to run the business at a profit, given the larger investment they would have had to make.
The value of the tangible assets which plaintiffs purchased under the Agreement was $5,000. Plaintiffs therefore paid $50,000 of the $55,000 purchase price for the intangible assets, i.e., goodwill. Customer goodwill depended almost entirely upon a non-competition provision enforceable against Barrasso personally; without such a provision, the goodwill of Great Road Floors as of the date of the closing (when David’s negligence occurred) was worth ten percent of what it would have been had Article XI of the Agreement barred Barrasso from competing in any manner in the flooring industry.
RULINGS OF LAW
The restrictive covenant is ambiguous in the two ways noted in the above findings. The ambiguity must therefore be resolved, if it can be, by the Court, relying upon the purposes of the underlying transaction, the conduct and understanding of the parties, and that construction of the ambiguous provision which will carry out the parties’ intentions in light of the Agreement as a whole. Coleman Bros. Corp. v. Commonwealth, 307 Mass. 205, 209-10 (1940); Shea v. Bay State Gas Co., 383 Mass. 218, 222-23 (1981); Finn v. McNeil, 23 Mass.App.Ct. 367, 372 (1987).
The ambiguous language of Article XI itself (“Seller hereby agrees that for a period of five (5) years Great Road Floors or any legal entity of which either is involved . . .”) is of little assistance. The word “either,” read literally and in context, can only refer to “Seller” *680 and “Great Road Floors,” the only two parties named in the preceding phrase. Because “Seller” is defined in the Agreement as “Great Road Floors, Inc.,” the word “either” neatly captures the redundancy that precedes it. Thus, “either” is most fairly read as a somewhat awkward substitute for only one party, that is, Great Road Floors, the seller.
To the extent that plaintiffs, or David, argue that “either” must be read to refer to Great Road Floors and Barrasso, such a reading places more weight on the language than it can bear without the support of parol evidence. Barrasso is nowhere named in the Agreement, and, without more, he cannot fairly be bound by the word “either” in Article XI.
Plaintiffs and David do argue that the other ambiguous language, “or any legal entity of which either is involved,” should be read to include Barrasso. In light of the Court’s construction of “either,” that phrase will be read to mean “or any legal entity of which Great Road Floors is involved.” The Court will further read “of which,” which is meaningless and probably a scrivener’s error, to mean either “with which” or “in which,” the most likely intended meanings of the parties.
The phrase “any legal entity with which [or in which] Great Road Floors is involved” cannot be taken literally, because its reach is clearly beyond the intention of the parties: Great Road Floors was “involved” with customers, suppliers, and others in the course of conducting its business, and the parties obviously had no intention to bind them. On the other hand, a legitimate and predictable concern of the individual plaintiffs was that Great Road Floors not compete in the guise of another corporation or other “legal entity.” The language may fairly be read to include such an entity.
The question here is two-fold: (1) whether the parties to the Agreement agreed that Barrasso individually be included among the “other legal entit[ies] with which [or in which] Great Road Floors is involved,” and therefore that he be bound by the restrictive covenant, and (2) whether Barrasso consented to, or should be held to, that covenant.
The answer to the first question was given by D’Amore in her trial testimony: she had previously rejected the language of the restrictive covenant because she did not believe that it included Barrasso, and she instructed David to draft language that did include him. Having signed the Agreement without reading it, on the incorrect assumption that the restrictive covenant in the document she was executing expressly named Barrasso, D’Amore can hardly argue that the language she had earlier thought did not include him now does so.[6]
Even if the parties to the Agreement were held to have agreed that Barrasso is included in the restrictive covenant, Barrasso is bound thereby only if he consented thereto, or if in the circumstances his assent is implied.
The Court concludes that Barrasso did not expressly assent to be bound personally by the restrictive covenant, or any other part of the Agreement, because of the manner in which he signed the Agreement. The executing party is identified above his signature as “Great Road Floors,” and below it as “Seller”; the Agreement is executed by that entity “by” Barrasso.[7] One who signs for smother in a representative capacity is not personally bound. See Schneider v. Armour & Co., 323 Mass. 28, 30 (1948) (“The liability of the defendants ... is to be ascertained from the terms of the written contract construed according to the usual rules of interpretation read in connection with the subject matter, the relation of the parties to the transaction, and the well understood usages of business”); see also McCarthy v. Azure, 22 F.3d 351, 356 (1st Cir. 1994) (“[I]t is settled . . . that a person signing a contract only in a corporate capacity, and unambiguously indicating that fact on the face of the contract documents, does not thereby become a party to the agreement”); Brennan v. Carvel Corp., 929 F.2d 801, 810 (1st Cir. 1991) (“Under Massachusetts law . . . unless the parties have otherwise agreed, an agent entering into a contract on behalf of a disclosed principal does not become individually liable on the contract”); C.A. Peairs, Jr., Business Corporations §487, at 236 (1971) (“The standard form of signature for a corporation is X Corporation by_A.B., Treasurer. . . Other possible forms give the corporate name without showing the capacity of the signer . . . ; corporate liability alone results from this form . . .”). Nor is Barrasso named as a party to, or elsewhere identified in, the Agreement. Finally, there is no persuasive evidence that anyone at the September 13, 1994 closing believed that Barrasso individually was a party to the Agreement. Accordingly, Barrasso executed the Agreement in his representative capacity only.
Nor do the circumstances of the case justify any implied agreement by Barrasso to be personally bound. His pre-closing statements (that he did not intend to open another flooring store, or even that he would be semi-retiring), in the context of the sale of a business which all understood was owned by, and sold by, the corporation, Great Road Floors, do not provide a basis for varying the express language of the Agreement as to who the contracting parties were.
Because the individual plaintiffs, through D’Amore, expressly instructed David, their attorney, to draft a restrictive covenant that would bind Barrasso individually, and because the Agreement which David put before his clients at the closing did not do so, the Court rules that David failed in that respect to provide the legal services he was retained *681 to provide. The failure to include Barrasso in the restrictive covenant was a material one, because one of the chief requirements of the individual plaintiffs wasthatBarrassonotcompete individually with their new business; had those plaintiffs known that the Agreement would not bind Barrasso, they would not have signed it. The Court rules that the standard of care in the circumstances of this case required David to provide an Agreement which bound Barrasso, and that his failure to do so amounted to a failure to exercise reasonable care and skill in handling the matter for which he was retained.[8] Pongonis v. Saab, 395 Mass. 1005 (1985); McLellan v. Fuller, 226 Mass. 374, 377-78 (1917); Caverly v. McOwen, 123 Mass. 574, 578 (1878); Collucci v. Rosen, 25 Mass.App.Ct. 107, 111 (1987); Glidden v. Terranova, 12 Mass.App.Ct. 597, 597-98 (1981). It remains for the Court to determine whether David’s negligence was a legal cause of damage to the plaintiffs, and if so, in what amount.
An attorney who violates his duty is liable to his client for any reasonably foreseeable loss caused by his negligence. Fishman v. Brooks, 396 Mass. 643, 646 (1986). The rule is easily stated, but not always easily applied. The Court has not found a Massachusetts appellate decision addressing the particular factual circumstances of this case. In the more common case of alleged malpractice in litigation, a plaintiff must prove that she probably would have obtained a better result had her attorney exercised adequate skill and care. Id. at 647. Here the claim is for malpractice in a commercial transaction, specifically, in connection with plaintiffs’ purchase of the assets (equipment and goodwill) of a business. Such a claim is analogous to one for injury to properly or property rights, e.g., for negligent rendition of an opinion of title; in both cases, as a result of the attorney’s negligence the client receives a diminished interest in the property purchased. Damage to property is measured by the difference between what such property is worth and what it should have been worth but for the attorney’s negligence. Mallen & Smith, Legal Malpractice, Sec. 19.4 (4th ed. 1996).
The plaintiffs here are thus entitled to the difference in value between what they actually received under the negligently drafted agreement, and what they should have received absent such negligence. Plaintiffs’ payment of $55,000 for assets which they assumed were protected by a competently drafted non-compete provision (i.e., one that bound Barrasso) is the best measure of the value those assets would have had absent David’s negligence. What plaintiffs actually received was tangible assets comprising primarily equipment (the value of which was not dependent upon the non-compete provision), and good will (the value of which was almost entirely dependent upon the non-compete provision). The Court has found that the equipment was worth $5,000, and that the good will absent a valid non-compete was worth ten percent of $50,000, or $5,000. Accordingly, the value ofwhat plaintiffs actually received was $10,000, and their damages are $45,000.
Plaintiffs argue that they are entitled to lost profits resulting from David’s negligence. They assert that, had David exercised adequate skill and care, the restrictive covenant would have bound Barrasso, and they would not have suffered the loss of profits which they say resulted from his competition in the flooring business.
Plaintiffs’ argument begs the preliminary question whether, had the plaintiffs insisted on an agreement which bound Barrasso, there would have been any agreement at all. Because Barrasso was not willing to so restrict his activities, at least at the sale price of $55,000, there would have been no sale at that price. Whether there would have been a sale at a higher price, and if so at what price, is a matter of conjecture (both because there is insufficient evidence as to what higher price Barrasso would have accepted, and what price, if any, plaintiffs would have been willing and able to pay). Further speculation would be required to determine what profits plaintiffs lost as a result of David’s negligence, or put another way, what profits they would have realized had David exercised adequate skill and care.
Analogizing to cases of malpractice in litigation, the Court concludes that, as to lost profits, plaintiffs have failed to carry their burden on the trial within the trial — that is, they have failed to prove by a preponderance of the evidence that, had David performed competently, they would have obtained a better result (i.e., that they would have been able to purchase the assets at all, let alone at a price they could afford). See Fishman v. Brooks, supra at 647. It requires the Court to pile speculation upon speculation to conclude that, even if such a purchase would have resulted had David not been negligent, plaintiffs would have made a profit given their necessarily larger (but unquantified) investment in the business.
Accordingly, even assuming that the measure of damages in an attorney malpractice case may include lost profits, such an award is not appropriate here because it would be based upon impermissible speculation.
The Court having ruled for plaintiffs on their claims against David in case No. 95-6475, and plaintiffs having stipulated that in such event they seek recovery only from David, judgment shall enter for defendants in case No. 95-5679.
All requested findings of fact and rulings of law not consistent with the foregoing are denied.
ORDER FOR JUDGMENT
For the reasons stated above, it is hereby ORDERED:
*682 1. that in Civil Action No. 95-5679 judgment shall enter in favor of defendants Great Road Floors, Inc. and Thomas Barrasso, as to all counts; and
2. that in Civil Action No 95-6475 judgment shall enter in favor of plaintiffs Steven Clerico and Catherine D’Amore in the amount of $45,000.

 At trial plaintiffs waived any misrepresentation claims against attorney David.

 Plaintiffs stipulated at trial that they seek recovery either from Great Road Floors and Barrasso, if the Court rules that the non-competition provision applies to Barrasso individually, or from David, if the Court rules that that provision does not apply to Barrasso individually.

 David has asserted no defense of contributory negligence.

 Plaintiffs acknowledge in paragraph 20 of the complaint in No. 95-5679 that ”[o]n its face, the Purchase and Sale Agreement was executed by Thomas F. Barrasso in a representative capacity on behalf of Great Road.”

 Whether the attorney was negligent is a matter “on which expert testimony is usually required,” Fishman v. Brooks, 396 Mass. 643, 647 (1986), citing Pongonis v. Saab, 396 Mass. 1005 (1985). hi this case the Court concludes that the negligence is so apparent that expert testimony is unnecessary, particularly in a jury-waived trial. See Pongonis v. Saab, supra (expert testimony not essential where the claimed legal malpractice is so gross or obvious that laymen can rely on their common knowledge to recognize or infer negligence, citing Gilbert v. Williams, 8 Mass. 51, 57 (1811) (“[W]henever an attorney disobeys the lawful instructions of his client, and a loss ensues, for that loss the attorney is responsible")).