## CHERRY *vs.* MONRO and others.

A defendant in the court of chancery cannot object that another defendant, having no interest in the subject matter of the suit, is improperly made a party.

It is only where the complainant has some ground of relief against each defendant, and where his claims for relief against them respectively are improperly joined in one suit, so as to make the bill multifarious, that each defendant has the right to demur upon the ground that the other defendant is improperly joined with him in the suit.

C. and S. purchased a lot of land from M., in their joint names, and gave back a joint bond and mortgage for the purchase money ; C. subsequently conveyed to S. his undivided half of the lot, subject to the payment of that mortgage, and also conveyed his half of other real estate owned by them jointly, for the purchase money of which they had also given their bonds and mortgages, and S. agreed to pay the amounts due upon these several bonds and mortgages, and gave C. a bond of indemnity against the same; S. subsequently conveyed the lot in question to B. with covenants of seisin and warranty, and covenants against incumbrances; S. became insolvent and left the state, and failed to pay the amount due upon the bond and mortgage given to M.; and M. being about to foreclose the mortgage, B. induced him to bring a suit against C. upon the bond, instead of proceeding against the mortgaged premises ; a rule *nisi* for judgment having been obtained, against C. in that suit, he tendered to M. the amount due upon the bond and

Cherry *v.* Monro.

mortgage with interest and costs, and demanded an assignment of the bond and mortgage to a third person, so that he might he enabled to enforce the collection thereof against the mortgaged premises; M., in collusion with B. refused to receive the money and make the assignment; C. thereupon filed his bill in chancery against M. and B. and obtained an injunction restraining him from proceeding in his suit at law against C.

*Held,* that it was immaterial whether, at the time of giving the bond and mortgage, the land or the bond was the principal security for the debt; that the subsequent agreement between C. and S., and the conveyance to the latter, constituted the relationship of principal and surety not only between the parties personally, but also in reference to the interest of S. in the mortgaged premises.

*Held also,* that the equitable rights of C. and S., under that agreement and conveyance, were the same as though S. had owned the whole lot originally, and had mortgaged it to secure his own debt, and C. had joined with him in the bond as a mere surety; that in such a case, as between the owner of the equity of redemption in the mortgaged premises and the surety in the bond, the land would be the primary fund for the payment of the debt; and that if the surety should be called upon by the mortgagees for payment, he would have the right to be subrogated, in their place, to their remedy against the land for the payment of the debt.

*Held further,* that it made no difference, in respect to the equitable right of C. to subrogation to the remedy of the principal creditor against the mortgaged premises, that a bond of indemnity had been given to him by S. For being insolvent, his sureties in the indemnity bond had an equitable right to insist that the mortgagee should resort to the mortgaged premises for payment; instead of collecting the debt from C., and thereby charging the same upom them as the sureties of S.

A person who purchases land subject to the payment of a prior mortgage thereon, has no legal right to have the mortgage debt charged upon the mortgagor personally, instead of charging it on the land upon which it was charged by the mortgage.

As between mere equitable claims, he who is first in time is superior in right.

THIS case came before the chancellor upon an appeal, by T. F. Monro and S. Beardsley, two of the defendants, from a decree of the vice chancellor of the seventh circuit; and upon a cross-appeal, by the complainant, from an order, forming part of such decree, suppressing a portion of the complainant's testimony. The facts of the case, as established by the pleadings and proofs, were as follows:

Previous to the 10th of March, 1834, the complainant and J. Seymour, one of the defendants in this cause, against whom the bill was taken as confessed upon notice to him as an absentee, were copartners in the cabinet-ware business in the village of Auburn. During the continuance of their copartnership

they had contracted divers debts, and had purchased several parcels of real estate, for which they had taken conveyances in their joint names, and had given bonds and mortgages thereon; several of which bonds and mortgages were outstanding and unpaid at the time of the dissolution of their copartnership. Among the real estate thus bought by them was a lot purchased from the defendant T. F. Monro and his then copartner E. Jones, upon which Cherry & Seymour had given back a mortgage, for the purchase money, and for which purchase money they had also given their joint bond. That mortgage had been duly recorded; and at the dissolution of their copartnership there was due upon it about $1900.

The copartnership between Cherry & Seymour was dissolved on the 10th of March, 1834. And in the settlement of the affairs of the copartnership between them, it was agreed that Cherry should convey to Seymour his undivided half of all the real estate which they held jointly, and that Seymour should pay all the bonds and mortgages which had been given by them jointly, and all the copartnership debts. It was also agreed that Seymour should give to Cherry a bond in the penalty of $3000, with sureties; conditioned for the payment of all those bonds and mortgages and all the debts due from the firm, and also for the indemnification of Cherry against the same. A bond was given by Seymour to Cherry accordingly; in which bond J. Garrow and two other persons joined as sureties for Seymour. At the same time Cherry conveyed to Seymour, in fee, the undivided half of the several lots owned by the parties jointly, subject to the mortgages thereon; specifying as to each lot the mortgage thereon, the persons by whom and to whom the same was given, and the amount due. And by the conveyance Cherry agreed to warrant and defend the premises against all incumbrances thereon, created by him, except the mortgages therein before mentioned. That conveyance was duly recorded, in March, 1834. About two years afterwards, Seymour conveyed the lot previously mortgaged to Monro & Jones by Cherry & Seymour, to the defendant S. Beardsley;

Cherry *v.* Monro.

with covenants of seisin and warranty and against incumbrances.

In August, 1838, Jones being then dead, and Seymour being insolvent and having removed from the state, Monro informed Beardsley that he was about to proceed to collect his debt, by a foreclosure of the mortgage, which then belonged to him as the surviving mortgagee. Whereupon Beardsley agreed that if he would bring a suit upon the bond, instead of proceeding against the mortgaged premises for the collection of the amount then remaining unpaid, he would advance him $100, and the residue of the mortgage in January thereafter. And in pursuance of that arrangement, a suit was commenced against Cherry, upon the bond, in the supreme court; and a rule *nisi* for judgment by default was entered on the 15th of January, 1838. The amount then remaining due upon the bond and mortgage, including interest and the costs which had arisen in the suit upon the bond, was about $556. And on that day Cherry applied to Monro and tendered him the amount due upon the bond and mortgage, with interest and costs, and required of him an assignment of the bond and mortgage to a third person; so that he might enforce the collection thereof against the mortgaged premises, which, in equity, were primarily liable for the payment of the debt. He also tendered to Beardsley an assignment of so much of the bond of indemnity, which he held against Seymour and his sureties, as should be a fair proportion thereof, in reference to the amount due upon this bond and mortgage, and the amount which he should be obliged to pay on account of other debts which, at the time of the dissolution of the partnership, Seymour had agreed to pay and indemnify the complainant against. Monro refused to receive the money and make the assignment. And the complainant thereupon filed the bill in this cause for relief; and obtained an injunction to restrain Monro from proceeding in his suit at law to collect the amount from the complainant or his property. The cause was heard on pleadings and proofs as to Monro and Beardsley, and upon the bill taken as confessed against Seymour **the absentee.**

The vice chancellor, by his decree, authorized the defendant Beardsley to elect to have an assignment of the bond and mortgage, to protect his title to the mortgaged premises, upon payment of the amount due to Monro; but made the injunction perpetual against proceeding at law upon the bond. And if Beardsley should not elect to pay the amount, and take an assignment upon those terms, the defendant Monro was directed to cancel the judgment, which he had caused to be entered up after the tender to him on the 15th of October, 1838, and to assign the bond and mortgage, in trust for Cherry; so that the collection thereof could be enforced for his benefit, against the mortgaged premises, upon payment by Cherry of the amount remaining due upon the mortgage, and interest, and the costs in the suit at law. The decree also charged Monro and Beardsley with the costs of the complainant in this suit.

*P. G. Clark*, for the appellants. Beardsley has a freehold estate of inheritance in the premises mentioned and described in the deed, from Seymour to him, of August 3, 1836, and recorded on the 3d of the same month. That deed conveyed to the grantee an absolute and unconditional fee in the land therein mentioned. The qualifying clause related only to the covenants, and not to the estate conveyed. The deed, under any construction, is at least as effectual as a quit claim deed. Such a deed would convey a fee. The bond and mortgage being given to Monro & Jones to secure a debt due from Seymour & Cherry jointly at the time of the execution of the bond and mortgage, Seymour & Cherry were both principals at that time, and not sureties for each other. Cherry, therefore, was not a surety for Seymour as to that debt. The subsequent agreement, between Seymour & Cherry, cannot reach back and attach itself to the original agreement. Cherry still holds the same relation to Monro & Jones that he always did. They were not parties to the subsequent agreement between Seymour & Cherry; and therefore were not affected thereby in any way whatsoever. Before that agreement, Monro & Jones had a right to sue upon the bond, and they still have that right

Cherry *v.* Monro.

The obligation resting upon Seymour, as between him and Cherry, to pay the bond and mortgage to Monroe and Jones, is a matter of contract, and not of equity. The agreement is, like any other agreement, to be enforced by an action at law. Independent of that contract, Seymour is under no obligation to Cherry to pay that bond and mortgage. Cherry has no claim upon Seymour. The undertaking of the latter, then, is matter of contract and not of equity; and like all other contracts it must be enforced at law, and not in equity. Cherry has no greater right to ask the interference of this court in assisting him to enforce the contract between him and Seymour, than he would have in respect to any other contract. He must rely upon his contract; and, if there is any breach of it, he must enforce his remedy at law, and not in equity.

The right of subrogation exists only between the parties and privies. Had the debt to Monro & Jones been originally the individual debt of Seymour, and had Cherry signed the bond as surety only, if the property mortgaged had originally belonged to Seymour, and Cherry had refused to sign the bond unless Seymour would secure it by a mortgage; and the bond and mortgage had been executed and delivered upon these conditions, and Seymour had afterwards sold and conveyed the premises to Beardsley; yet Cherry would not have had any right to be subrogated in the place of Monro & Jones, as against Beardsley, without showing that Beardsley knew of the equities existing between Seymour & Cherry, at the time he purchased of Seymour. Beardsley being a bona fide purchaser, Cherry would have no superior equity over Beardsley; for in such a case, the law leaves him in possession who already has it. The records in this case furnished no such evidence. The recording act only makes the record notice of a conveyance, or of an incumbrance upon the title. It is not made evidence of any covenant contained in the deed or instrument recorded. It is not evidence or notice of any agreement, in relation to the payment of incumbrances. If the deed from Cherry to Seymour had contained a clause expressly providing that the mortgage mentioned should be collected out of

the mortgaged premises, and that the bond should not be sued until after a sale of such premises, stating that Cherry was only surety for Seymour, the record would not have been notice of that fact to Beardsley; but the complainant would have been bound to show notice in fact. There is no such thing as constructive notice, under the recording acts. (See 2 R. S. 746, 2d ed. 1 R. L. of 1813, 370, § 4. 1 John. Ch. Rep. 566.)

If the record is evidence of covenants and agreements, which we deny, the deed from Cherry to Seymour, does not state that Seymour was to pay up the bond and mortgage. Nor does it show who was principal, or who was surety for the original debt. For aught that appears upon the face of the deed, the bond and mortgage was given to Monro & Jones to pay an individual debt of Cherry. At any rate, there is nothing in the deed which shows that Cherry is a surety for Seymour. And Beardsley having, at the time of the purchase, no notice in fact as to who was to pay the debt to Monro & Jones, had a right to infer that the rule of law applicable to all other cases would be applied to this. He had a right to purchase under the legal presumption that the bond was the principal debt, and that the mortgage was a mere collateral instrument, a mere security for the payment of Seymour & Cherry's bond. In other words, that by purchasing the land, he only stood as surety for Seymour & Cherry, and that the land conveyed to him could only be reached in case of the failure of Monro & Jones, to collect the bond from the makers. He had a right to suppose that, if the holders of the bond and mortgage should attempt to foreclose the mortgage before suing the bond, he would have a right to be subrogated in the place of the holders of the bond and mortgage; to enable him to sue upon the bond before any resort could be had to the mortgaged premises. (Green v. Hart, 1 John. Rep. 580. Neimcewicz v. Gahn, 3 Paige's Rep. 630.)

If Cherry has a right to be subrogated to the rights of Monro & Jones, that is, to stand in their place, they must be placed in his. The parties must change places entirely. Cherry should, therefore, have averred in his bill, that he tendered the bond

given to him by Seymour upon the dissolution of the co-partnership, to Beardsley. This is an important averment; and he has neglected to make it.

Monro cannot be compelled to assign the bond and mortgage to Cherry. Beardsley had a right to pay up the mortgage and hold the bond as an outstanding claim against Seymour. The complainant, therefore, asks for too much. The most that he is entitled to, under any circumstances, is a perpetual injunction as to any execution against him, upon the judgment recovered on the bond. The fact of Seymour's solvency does not affect the question of right. Again; Seymour was improperly made a defendant. He has no interest in the question before the court. His rights will not be affected, whether the bill is sustained or dismissed. There is, therefore, a misjoinder of defendants.

For these reasons, the decree of the vice chancellor should be reversed; and the complainant's bill should be dismissed, with costs.

*L. H. Sandford*, for the respondent. *First*, as to the defendant's appeal. The complainant, on conveying his half of the premises to Seymour, subject to the payment of the whole mortgage given to Monro & Jones, became a surety for Seymour in regard to the debt due to Monro & Jones. The defendant Beardsley had notice of Cherry's being such surety, when he purchased of the defendant Seymour. He bought the land, which, in equity, was the fund primarily liable for this debt, subject, of course, to all the liens and equities which he knew of, or which would have been exhibited to him in tracing his title to his grantor Seymour; or which the records of that title displayed. (*Jumel* v. *Jumel*, 7 *Paige*, 591.) The complainant, therefore, on paying the debt to Munro, was entitled to be substituted in his place, and to have the benefit of the mortgage, to enforce it against the land. And in equity, he could require the mortgagee to pursue his remedy first against the mortgaged premises. (1 *Story's Eq.* 477, § 499. *Id.* 588, § 633, 634. *Hayes* v. *Ward*, 4 *John. Ch. Rep.* 123, 129. *Loud*

v. *Sargeant*, 1 *Edw. Ch. Rep.* 164. *Neimcewicz* v. *Gahn*, 3 *Paige*, 613. *S. C.* 11 *Wend.* 312. *Jumel* v. *Jumel*, 7 *Paige*, 591. *Cox* v. *Wheeler*, *Idem*, 248. *Palmer* v. *Foote*, *Idem*, 437. *Heyer* v. *Pruyn*, *Idem*, 465. *Rodes* v. *Crockett*, 2 *Yerg. Rep.* 346. *Groves* v. *Graves*, 1 *Wash. Va. Rep.* 1. *Copis* v. *Middleton*, *Turn. & Russ.* 229.) The complainant offered to the defendants Beardsley and Monro, all and more than he was entitled to. He was not bound to offer to Beardsley any interest in his bond of indemnity. The sureties in that bond had a right to require the mortgaged premises, the primary fund, to be exhausted before calling upon them.

The decree is right in directing Monro to cancel the judg-ment and assign the bond and mortgage for the complainant's benefit, on being paid the amount due thereon. And it was also correct in charging the defendants with costs; they hav-ing combined together to compel the complainant to make the inequitable payment in question. (*Webster* v. *Wise*, 1 *Paige*, 319. *Hume* v. *Norton*, *Hopk. Rep.* 344.) Seymour also was a proper party to the suit. (*Hallett* v. *Hallett*, 2 *Paige*, 15. *Covenhoven* v. *Shuler*, *Idem*, 122. *Bailey* v. *Inglee*, *Idem*, 278.) But even if he was not, Monro and Beardsley cannot make the objection. (*Story's Eq. Pl.* 194, 198, 203. *Butts* v. *Genung*, 5 *Paige*, 254.) The decree, upon the mer-its, should therefore be affirmed.

*Second ;* as to the complainant's appeal from the order sup-pressing the testimony of the complainants as to the tender of a transfer of a proportional interest in the bond of indemnity. This is not the case of an answer denying the case made by the bill, and admitting a different case which, if stated in the bill, would entitle the complainant to relief. Here the com-plainant's bill is admitted ; and a collateral matter is set up to ward it off, which the complainant can rebut, in an instant, by proof which, from its nature, could not be a surprise upon the defendant; which was not pretended. It is like the defence of bona fide purchase without notice ; which defence the com-plainant may meet by proving notice. (2 *Dan. Ch. Pr.* 408.) The replication puts this matter in issue. We wanted no dis-

Cherry *v.* Monro.

covery, and it was not necessary therefore to amend our bill. (*Griffith* v. *Griffith*, 1 *Hoff. Ch. Rep.* 153, 165. 1 *Dan. Ch. Pr.* 513. 1 *Hoff. Ch. Pr.* 43. *Matthew* v. *Haubury*, 2 *Vern.* 187. *Attwood* v. ———, 1 *Russ.* 353. *Hughes* v. *Garner*, 2 *Younge & Coll.* 328.) Again ; the order suppressing testimony, if otherwise correct, should have distinctly specified the portions intended to be suppressed, and it should have included the defendant's cross-examinations, and other testimony on the same subject ; which was more voluminous than the complainant's examination.

THE CHANCELLOR. If Seymour had been within the juris diction of the court, so that he could have been personally served with process, the defendant Beardsley probably would have had a right to insist that he should be made a party, for his benefit. For, in that case, Beardsley might have been entitled to a decree that Seymour should pay off the mortgage, so as to relieve the premises from the lien thereof. The complainant too, in that case, would have had an interest in making Seymour a party. For he would have been entitled to a personal decree against him, in the first instance, to pay off the mortgage ; so as to relieve the complainant as well as Beardsley from the payment of the debt for which they each stood in the situation of a surety for Seymour. But as he was an absentee, and had no property in this state which could be reached and applied to the payment of this demand, he probably was not a necessary party for any purpose. (*Bigelow* v. *Bush*, 6 *Paige's Rep.* 343.) One defendant in this court, however, cannot object that another defendant, having no interest in the subject matter of the suit, is improperly made a party. (*Welf. Eq. Pl.* 281. *Crane* v. *Deming*, 7 *Conn. Rep.* 387. *Butts* v. *Genung*, 5 *Paige's Rep.* 256.) It is only where the complainant has some ground of relief against each defendant, and where his claims for relief against them respectively are improperly joined in one suit, so as to make the bill multifarious, that each defendant has the right to demur, upon the ground that the other defendants are improperly joined with him in the suit.

The decree of the vice chancellor upon the merits, is clearly right. It is wholly immaterial whether, at the time of giving the bond and mortgage, the land or the bond was the principal security for the debt. For the agreement between Cherry & Seymour, upon the dissolution of their copartnership, and the conveyance of Cherry's undivided half of the mortgaged premises, constituted the relationship of principal and surety, not only between the parties personally, but also in reference to the interest of Seymour in the mortgaged premises. After that arrangement had been made, and the interest of Seymour in the mortgaged premises had been thus conveyed, the equitable rights of the parties to that transaction were the same as though Seymour had owned the whole lot originally, and had mortgaged it to secure his own debt, and Cherry had joined with him in the bond for the same debt, as a mere surety. Had that been the real form of the transaction originally, no one can doubt, that as between the owner of the equity of redemption in the mortgaged premises and the surety in the bond, the land would be the primary fund for the payment of the debt. And if the surety should be called upon by the mortgagees for payment, he would have the right to be subrogated in their place; and to their remedy against the land, for the payment of their debt.

Nor did it make any difference as to the equitable right of the complainant to subrogation to the remedy of the principal creditor against the mortgaged premises, that a bond of indemnity had been given to him by Garrow and others. For as Seymour was insolvent, his sureties in the indemnity bond had an equitable right to insist that Monro, the surviving mortgagee, should resort to the mortgaged premises for payment; instead of collecting it from Cherry, and thereby charging the debt upon them as the sureties of Seymour in the indemnity bond. To understand the rights of Cherry and the sureties in the indemnity bond, in reference to the primary liability of the mortgaged premises for the payment of the debt for which the mortgage was given, it is necessary first to contemplate them as they existed immediately after the conveyance of the 10th of August,

1834, and the giving of the indemnity bond of that date; and then to see if their equitable rights, as sureties, have been lost by the subsequent conveyance of the mortgaged premises to Beardsley.

At that time there was a debt due to Monro, as surviving mortgagee, from Seymour as the principal debtor, for the security of which debt Monro held a recorded mortgage upon land which then belonged to such principal debtor. He also held a bond for the same debt, in which Cherry stood in the situation of a mere surety of Seymour; and Cherry held the bond of Garrow and others also as sureties of the principal debtor, to indemnify Cherry against being called upon for the payment of the debt due from Seymour, the mortgagee. Had Monro, at that time, attempted to collect his debt by a suit upon the bond against Cherry, instead of resorting to the mortgaged premises which belonged to the principal debtor, can any one doubt that Garrow and the other sureties in the indemnity bond, who were bound to protect Cherry against the consequences of such a suit, would have had a right to demand a transfer of the bond and mortgage to them for their protection and indemnity, upon advancing the money then due thereon? And if they had the right and neglected to do so, Cherry himself would have had the same right to a transfer of the mortgage, for his own indemnity. For he was not bound to rely upon the sureties in the bond of indemnity; who were only secondarily liable as between them and the owner of the premises, which were primarily liable for his indemnity under the agreement and conveyance of the 10th of August, 1836. It must also be recollected that Cherry held that bond of indemnity as his security against the payment of debts, to the amount of $8,000, due to the mortgagees of other lots; his half of which lots were conveyed to Seymour at the same time. And as the penalty of the indemnity bond, to protect Cherry from liability to the mortgagees for all those debts, and to indemnify him against the debts of the firm, was but $3000, it is perfectly evident that all the parties to the arrangement made at the time of the dissolution of the partnership, must have understood that

the several lots which were conveyed to Seymour, subject to the mortgages thereon, were to be primarily liable for the payment of the debts which were secured by mortgages upon those lots respectively.

The deed from Cherry to Seymour, under which Beardsley derived his title to the premises in question in this cause, showed upon its face that there was a mortgage upon the lot, to Jones and Monro, of about $1900, and that the premises were conveyed subject to that mortgage. This would have been constructive notice of the mortgage, and of the equitable right of Cherry to have the debt charged upon the mortgaged premises, as the primary fund, even if the mortgage itself had not been upon record. But this is not a case in which a notice of the prior equity of Cherry, and of the sureties in the indemnity bond, was necessary to preserve their rights. For Beardsley did not and could not claim any strictly legal right to have the debt charged upon the complainant personally, instead of upon the lot on which it was charged by the mortgage. And as between mere equitable claims, he who is first in time is superior in right. Cherry had done nothing to impair his equitable claim to have the debt charged upon the interest of Seymour in the land which was primarily liable for the debt secured by the mortgage. And if Beardsley, at the time of his purchase, had inquired of the complainant, or of the surviving mortgagee named in the deed of Cherry, as a prudent purchaser ought to have done, instead of relying upon Seymour's representation that the incumbrances were paid, or upon his covenant against the incumbrances, he would have ascertained the true state of the facts. The subsequent attempt, therefore, of these defendants to defeat the prior equity of the complainant, by charging this debt upon him personally, was inequitable and unconscientious. And the vice chancellor would have done the defendant Monro no injustice if he had refused to allow him for the $30 costs which he had improperly made in the action at law upon the bond. For it is evident that the action upon the bond was not brought for the sole purpose of collecting his debt, but for the

Cherry *v.* Monro.

improper purpose of charging it upon the surety personally, and relieving the mortgaged premises from the lien of the mortgage.

Even if Monro was ignorant of the complainant's equitable rights when the action at law was commenced, he could not have been ignorant of them when the bond of indemnity was shown to him, and the amount due, and the costs, were tendered, and he was requested to assign the bond and mortgage for the protection of the complainant and to enable him to obtain repayment out of the mortgaged premises. The vice chancellor, therefore, very properly charged Monro, as well as Beardsley, with the costs of this litigation.

It was not necessary for the protection of the rights of Beardsley that he should have the benefit of the bond as against Seymour. For if Seymour should ever be worth any thing, he would be directly liable to Beardsley upon the covenants in his deed. The decree, so far as it is appealed from by the defendants Monro and Beardsley, must therefore be affirmed with costs.

Upon the matter of the cross-appeal, I think the decision of the vice chancellor was wrong. The defendants gave notice of a motion to strike out all the testimony, on the part of the complainant, which had been objected to before the examiner. This embraced a great portion of the testimony of the complainant which was clearly relevant and proper, to show that Seymour was insolvent, and that his property had been sold upon executions against him for its full value ; and to prove the exhibition, to Monro and Beardsley, of the indemnity bond, showing distinctly the equitable rights of the complainant ; and the production of papers which they were requested to sign to give effect to such equitable rights upon the payment of the money tendered by him. Yet the complainant was charged with the costs of that motion, in the final decree, because the vice chancellor thought it was not necessary for the complainant to prove that, in the offer which he made to the defendants, he consented to give Beardsley an interest in the indemnity bond if it could be any benefit to him. As the substance of the motion was denied, it was not proper to charge the complainant with costs

even if the decision was right as to the immaterial part which was granted. I think the decision was wrong, however, in granting any part of the application. As the sureties in the indemnity bond had an equitable right to insist that the debt should be charged upon the mortgaged premises as the primary fund, it was not necessary that the complainant should tender to Beardsley an interest in that bond. But that tender having been made, at the same time, and as a part of the offer which it was necessary for the complainant to show, for the purpose of putting the defendants clearly in the wrong, and charging them with the costs of the litigation, it necessarily became a part of the proofs in the cause, and could not be separated from the rest of the transaction. The whole motion, therefore, should have been denied; and the costs of opposing it would have been properly taxable against the defendants as costs in the cause. The part of the decree which was appealed from by the complainants must therefore be reversed with costs.