# Vankirk Land & Construction Co. *et al. v.* Josiah Morris & Co. *et al.*

*Bill in Equity to enforce Collection of a Judgment.*

1. *Bill to enforce judgment and to compel creditor of prior lien to exhaust securities held by him; when bill without equity.* On a bill filed by the judgment creditors of a corporation to enforce the payment of such judgment, it appeared that in 1890 the corporation executed a mortgage upon its lands to certain named creditors. Subsequently there was another mortgage given to one Knowles, which purported to have been executed by said corporation. It was averred in the bill that this later mortgage was never authorized by said corporation; that the indebtedness it purported to secure was not a debt of the corporation, but was an indebtedness of its president to said Knowles; that the execution of said

mortgage was procured by artifice and that said president of the corporation, to secure said indebtedness to Knowles, deposited with him a large number of shares of stock and other security. Subsequently, the corporation and Knowles entered into a written agreement ,in which, while it was recited that the corporation denied the execution of said mortgage to Knowles, and denied the debt purported to be secured by it was its debt,. said corporation, for reasons stated therein, agreed to pay on or before a certain date, the amount claimed by Knowles to be due him upon said .mortgage debt, and Knowles agreed upon the payment of said amount to transfer to the corporation his claim against the president of said corporation, together with the securities deposited by said president for its payment. The said corporation failed to pay Knowles the amount so agreed upon, and Knowles recovered a judgment against it for said sum, together with interest, no part of which had been paid at the time of the filing of the bill. In the meantime, the first mortgage executed by the corporation had been foreclosed, and the property conveyed therein had been bought at the foreclosure sale by a third party. Upon Knowles seeking to redeem said property from the purchaser at the foreclosure sale, an agreement was entered into between them, by which it was agreed that Knowles should have his judgment paid out of said land so purchased at the foreclosure sale. The bill prayed for an accounting to ascertain the properties pledged by the president of the corporation to Knowles, and the amount due Knowles and the condition of the contract between him and the purchaser at the foreclosure sale, and that Knowles be required to exhaust the security afforded him by his contract with said purchaser at the foreclosure sale, before he be allowed to resort to any of the stocks and securities which had been given to him as collateral by the president of the corporation, and that said stocks and securities be sold for the payment of complainant's judgments. *Held*: (1.) That the said bill did not present a case for marshalling securities; (2) that as a bill to compel Knowles to obtain satisfaction of his debt out of his contract with the purchaser at the foreclosure sale, it is without equity; (3) that under the facts so averred, the complainants show no interest in the stocks and .securities delivered by the president of the corporation to Knowles, which they can subject to the payment of their judgment; and, therefore, the bill is without equity.

[Vankirk Land & Construction Co. *et al.* v. Josiah Morris & Co. *et al.*]

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. A. D. SAYRE.

The bill in this case was filed on July 28, 1898, by the apellees, Josiah Morris & Company and George F. Moore, against the Vankirk Land & Construction Company, William H. Knowles and W. J. Vankirk. The complainants filed the bill as judgment creditors of the Vankirk Land & Construction Company, and it is averred in the bill that Josiah Morris & Company recovered their judgment against the Vankirk Land & Construction Company on September 25, 1895, for the sum of $13,371.10, and that George F. Moore recovered a judgment against the Vankirk Land & Construction Company on May 5, 1897, for $4,950, and that execution had been issued upon each of said judgments and returned no property found. The facts as averred in the bill, so far as is necessary to an understanding of the decision on the present appeal, are sufficiently stated in the opinion. By amendment, Morris Adler was made a party defendant to the bill. The bill was demurred to upon several grounds, among which were the following: 1. That it does not aver that the complainants have any right to the satisfaction of their judgment against the Vankirk Land & Construction Company out of the securities received by the defendant Knowles from W. J. Vankirk, as alleged in the bill. 2. It does not appear from the allegations of the bill that the complainant is entitled to the relief prayed for. 3. It does not appear by said bill that the Vankirk Land & Construction Company ever paid or offered to pay said Knowles the amount, upon the payment of which said securities were to be delivered, and the bill contains no offer to pay the balance due upon said indebtedness except upon a surrender of all said securities when the bill shows that some of said securities have been collected or disposed of. 4. It is not alleged that the debt for which said securities were pledged to said Knowles has ever been paid by any one, and no offer is contained in the bill to pay said indebtedness except conditional upon the delivery of all of said securities, when it is shown that some of said securities have been collected or disposed of.

[Vankirk Land & Construction Co. *et al.* v. Josiah Morris & Co. *et al.*]

On the submission of the cause upon the demurrers, the court rendered a decree overruling them. From this decree the respondents appeal, and assign the rendition thereof as error.

WATTS, TROY & CAFFEY, WILLIAM A. BLOUNT and A. C. BLOUNT, JR., for appellants.—If the contract did not vest the Vankirk Company with any right in the property, it is clear that the judgment, founded on such contract, did not. "A judgment recovered in any form of action is still but a security for the original cause of action, until it be made productive in satisfaction to the party, and, therefore, until then it cannot operate to change any other collateral concurrent remedy." *Drake v. Mitchell*, 3 East .258.

And this doctrine is specifically applied to deny a judgment without satisfaction any effect of transferring property to the judgment debtor.—*Spivy v. Morris*, 18 Ala. 254; *Brinsmead v. Harrison*, L. R. 7 C. P. 584; *Lovejoy v. Murray*, 1 Wallace 1-16. See also *Gusdorf v. Ikelheimer*, 75 Ala. 32; *Coker v. Shropshire*, 59 Ala. 542; *Gordon v. Bell*, 50 Ala. 213.

The corporation failed to keep its agreement. It never paid any part of the $65,000. The transfer was a conditional sale—not a mortgage or pledge—and when the Vankirk Land & Construction Company failed to keep its agreement and pay the $65,000, it forfeited all right, or rather failed to acquire any right to the said collaterals and the said collaterals remained the property of Knowles. He is, therefore, not accountable either to the Vankirk Land & Construction Company or to its creditors.—*Durden v. Lovelace*, 52 Alt. 289; *Leigh v. M. & O. R. R. Co.*, 58 Ala. 165; *Robinson v. Hirschfelder*, 59 Ala. 503; *Allen v. Maury*, 66 Ala. 10.

GEORGE F. MOORE, *contra*.—There can be no doubt that judgment creditors situated as the appellees are shown to be by the averments in the bill, can maintain a suit in equity, to subject to the payment of their judgments, any equitable assets of the corporation.—*Roman v. Dimmick*, 115 Ala. 233; *Nicrosi v. Irvine*, 102 Ala. 654; *Hall v. Henderson*, 114 Ala. 601; *Drennen v. Ala. Nat. Bank*, 117 Ala. 322.

The contract of September 12, 1894, must be construed as the sale of Knowles' interest in these securities, or it is without consideration It was a sale on credit of the securities to the Vankirk Land Company, and the title passed upon the execution of the contract to the Vankirk Company. "Sale of specific chattels in the possession of the seller is complete, and the title passes to the purchaser, when the parties agree upon the terms of sale, although the actual possession may not pass, and the purchaser may not be entitled to it, until he pays the price, or performs some other like stipulation."—*Pilgreen r. State,* 71 Ala. 368; *Shines v. Steiner,* 76 Ala. 458.

TYSON, J.—The bill in this case was filed by judgment creditors of the Vankirk Land & Construction Company, a corporation, after issue of execution and return thereof of no property found It appears from the bill as amended that on the 7th day of April, 1890, the corporation executed a mortgage upon its lands to Worthington, Elliott and DeBardeleben, and in September, 1891, executed another mortgage upon said lands to the respondent, William H Knowles, to secure an indebtedness to him of $1,500. There was another mortgage which purported to have been executed by this corporation to Knowles, to secure an indebtedness of $70,-000. It is averred, however, that the latter mortgage was never authorized by said corporation, and that the indebtedness it purported to secure was not a debt of the corporation, but was the indebtedness of W. J. Vankirk, its president, and that the execution of the mortgage had been procured by artifice. It further appears from the bill that Vankirk to secure said indebtedness to Knowles deposited with him a large number of shares of stock and other securities, the property of Vankirk, and had in addition executed a mortgage upon certain of his real estate. On the 10th day of September, 1894, the corporation and Knowles entered into a written agreement, which recited that Knowles held the said two mortgages upon its lands; that Knowles claimed that both mortgages were executed by the corporation, but that the corporation denied the execution of the mortgage for $70,000 and denied that the debt purported to

be secured by it was its debt. It further recited that the corporation desired to issue and sell its negotiable bonds secured by first mortgage upon said lands and said mortgage to Knowles being of record was a hindrance thereto. By the terms of this agreement the corporation promised to pay Knowles on or before the 8th day of February, 1895, the sum of $65,000, the amount claimed by him to be due, with interest from August 8th, 1894, at eight per cent *per annum* until paid. Knowles agreed that upon the execution of the contract he would deliver to the corporation both of said mortgages upon its lands and cancel them of record. The bill avers that Knowles "complied with that portion of his said contract."

Section five of said contract is as follows: "That immediately upon the payment to the party of the second part [Knowles] of the said sum of sixty-five thousand dollars with interest then due thereon, the party of the second part will forthwith assign, set over and deliver to the party of the first part [The Vankirk Land & Construction Company] all debts, demands and claims he may have or hold against W J. Vankirk or W. J. Vankirk & Co. (by whom the debt secured by the said mortgage is claimed to be due to the party of the second part), and will transfer, assign, set over and deliver to the party of the first part in due form of law all property and securities, collateral or otherwise which the party of the second part has or holds *to secure* any part of the debt assumed by this agreement together with his interest in the Maxent tract and the office property, and also will permit to the party of the first part the right to use any remedy either at law or in equity, which he, said Knowles, might use as an individual or as trustee to enforce the rights hereby given or collect the money due him from said Vankirk or Vankirk & Company."

The Vankirk Land & Construction Company failed to pay Knowles any part of the $65,000 agreed by it to be paid, and on the 27th day of March, 1895, Knowles obtained a judgment against it for the sum of $68,307.67, no part of which has been paid by said corporation. The bill avers that since the rendition of said judgment Knowles had sold and disposed of some of the stocks and other property given him by Vankirk and had re-

ceived therefor the sum of $30,000. The mortgage exe-
cuted to Worthington, Elliott and DeBardeleben had in
the meanwhile been assigned to Morris Adler and fore-
closed by him by suit in equity. The land of the cor-
poration was sold under the decree in the foreclosure
suit on the 17th day of May, 1895, and purchased by
Adler for the sum of $125,000. The amount of the mort-
gage indebtedness as ascertained by the decree was
$159,120. On the 10th day of October, 1895, Knowles
sought as judgment creditor of the corporation to re-
deem the lands from Adler, and tendered him the sum
of $125,000 and the further sum of $9,000 lawful charges,
etc. The tender was declined as insufficient. Knowles
thereupon filed his bill to enforce his claim to redeem
said lands. The chancellor dismissed his bill and he
appealed from said decree. Before the appeal was deter-
mined, it was dismissed by Knowles in consequence of
some agreement or compromise with Adler by which,
it is averred, Knowles "secured the right to have his
judgment paid out of said lands formerly owned by the
corporation prior to and to the exclusion of other cred-
itors of the company."

The prayer of the bill is for an account to ascertain
the properties pledged by Vankirk to Knowles, which of
said properties had been sold and which retained by
Knowles, and their present value; the amount due
Knowles, and the conditions of the contract with Adler.
The bill further prays that Knowles be required to
exhaust the security afforded him by his contract with
Adler on and as to the lands formerly belonging to the
corporation, before he can resort to any of the stocks
and securities covered by said contract of September
10th, 1894, and that said stocks and other securities be
sold for the payment of complainants' judgments. The
bill was demurred to by Knowles upon many grounds,
some of them assailing its equity, and from the decree
overruling the demurrer, this appeal is prosecuted.

It is clear that the bill fails to present a case for mar-
shalling securities The common debtor of complainants
and Knowles is the Vankirk Land & Construction Com-
pany. It has no interest in the contract between Knowles
and Adler. Its interest in the lands, the subject of that

agreement, passed to Adler by the sale under the decree of foreclosure, leaving only the statutory right of redemption, which it never attempted to exercise. That contract is purely personal to Knowles. Nor has the common debtor, the corporation, as will be shown, any interest in the securities pledged by Vankirk. These securities were and are the property of Vankirk subject to the rights of Knowles as pledgee and mortgagee. Complainants are not creditors of Vankirk. The doctrine of marshalling securities between judgment creditors is thus stated by Story: "The same principle applies to one judgment creditor who has the right to go upon two funds and another judgment creditor who has a right upon only one of them, both belonging to the same debtor."—1 Story Eq. Jur., § 634.

Nor would the complainants be entitled to a marshalling of securities as prayed were it conceded that the corporation has an interest in the securities pledged by Vankirk. The contract between Adler and Knowles, as we have said, was purely personal to Knowles and did not arm the creditors of the corporation with the right to demand that Knowles should first collect his claim out of Adler. Such result finds no sanction in the doctrine of marshalling of assets.—*Moses Bros. v. Home Building & Loan Association*, 100 Ala. 465; *Ex parte Kendel*, 17 Ves. 520. The bill, therefore, as a bill to compel Knowles to obtain satisfaction of his debt out of his contract with Adler is without equity. The complainants misconceive the effect of the contract of September 10th, 1894, between the Vankirk Land & Construction Company and Knowles. That contract was not an agreement upon the part of Knowles to sell the stocks and other securities referred to in it to the corporation in consideration of its payment of the $65,000. It was merely an agreement to transfer to the corporation the *claim* of Knowles against Vankirk together with the securities deposited by Vankirk for its payment, in the event the corporation paid the $65,000 which it claimed was Vankirk's debt and not its own. This was the agreement to which Vankirk assented. That this was the agreement is further made manifest from section six thereof, which provides that in the

event the corporation paid Knowles the $65,000, Knowles should enter into an agreement with sureties to indemnify the company, if it should be subsequently ascertained, that the debt from Vankirk to him did not amount to $65,000; and Vankirk in his assent to the contract, stipulated that his signature should "not be taken nor construed as an admission on his part that any particular amount is due by him to said W. H. Knowles or his *assignees* herein contemplated." Had the corporation paid the $65,000 as it had agreed to do, and the claim of Knowles against Vankirk and the hypothecated securities been assigned to it, it could not have held the securities as its own, nor have sold them as its property. It could only have sold them as pledgee for the payment of Vankirk's debt. Vankirk would have had the right, by the terms of the agreement to which he assented, to pay to the corporation the amount of his indebtedness to Knowles and retain the securities. And if the actual amount of his indebtedness to Knowles had been less than $65,000 paid by the corporation, it would none the less have been compelled to surrender the hypothecated securities to him, and look to Knowles for redress under his contract of indemnity. On the other hand, if Vankirk did not redeem his securities, and they had been sold by the corporation, the proceeds of such sale in excess of the actual amount of Vankirk's indebtedness to Knowles, would not have belonged to the company, but to Vankirk, and it would have had to account to him for the same. The surplus value, therefore, belongs to Vankirk and not to the corporation. The bill, however, fails to aver that the corporation had paid any part of the $65,-000 to Knowles. Indeed. it may be affirmed from the facts alleged, that it appears that it has not. Under the view we have taken of the contract of September 10th, 1894, it is a matter of no consequence to complainants whether the balance due Knowles from Vankirk is one dollar or the full amount claimed by him. The limit of their recovery from the securities would be the balance they paid Knowles, whatever that balance may be. There could be nothing to apply to the payment of their judgments. Their

17

offer to pay the balance which may be found upon an accounting to be due to Knowles, is nothing more than an offer to pay that balance in order that they may collect it again from the securities. This would be useless. A court of equity never does a useless thing. Complianants having shown no interest which they can subject to the payment of their judgments, their bill is without equity The decree of the city court must be reversed, and a decree will be here rendered sustaining the demurrer

Reversed and rendered.